TREG R. TAYLOR
ATTORNEY GENERAL

Aaron C. Peterson (Alaska Bar No. 1011087)
Senior Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: aaron.peterson@alaska.gov

*Attorney for the State of Alaska*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED COOK INLET DRIFT ASSOCIATION and COOK INLET FISHERMAN'S FUND,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>Defendants. | Case No.: 3:21-cv-00255-JMK<br><br>**MOTION TO INTERVENE** |

## I. INTRODUCTION

The State of Alaska moves for intervention as a matter of right as a defendant in this action, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. The State seeks to participate fully in the briefing and other proceedings in this case in order to protect the State's interest in the management of the Cook Inlet salmon fisheries, an interest that stands to be significantly impacted by relief United Cook Inlet Drift

Association (UCIDA) seeks in this case. The State has a right to intervene under Fed. R. Civ. Proc. 24(a)(2) because the State has a significant interest relating to the subject of the action, the disposition of the action may impair or impede the State's ability to protect its interest, this motion is timely, and the existing parties may not adequately represent the State's interest.

This Memorandum is supported by the points and authorities discussed below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At issue in this case is the validity of the regulations that implement Amendment 14 to the Fishery Management Plan for Salmon Fisheries in the EEZ off the Coast of Alaska (FMP). *See* 86 Fed. Reg. 60,568 (Nov. 3, 2021). Amendment 14 incorporates the Cook Inlet EEZ into the Salmon FMP's West Area, thereby bringing the Cook Inlet EEZ and the commercial salmon fisheries that occur within it under Federal management by the North Pacific Fishery Management Council (Council) and the National Marine Fisheries Service (NFMS). *Id*. NMFS is responsible for management, conservation, and protection of the nation's marine resources within the United States waters. The action applies the prohibition on commercial salmon fishing that is currently established in the West Area to the newly added waters of the Cook Inlet EEZ. *Id*.

This action was necessary to comply with Ninth Circuit ruling in *United Cook Inlet Drift Ass'n v. NMFS*, (*UCIDA I*) 837 F.3d 1055 (9th Cir. 2016) and to ensure the Salmon FMP is consistent with the Magnuson-Stevens Fishery Conservation and

Management Act (Magnuson-Stevens Act or MSA). In the previous case, the UCIDA plaintiffs challenged Amendment 12 and its implementing regulations, including removal of the Cook Inlet EEZ from the Salmon FMP. *United Cook Inlet Drift Ass'n v. NMFS*, No. 3:13-cv-00104-TMB, 2014 WL 10988279 (D. Alaska 2014). On appeal, the Ninth Circuit held that the Magnuson-Stevens Act requires a Council to prepare and submit FMPs for each fishery under its authority that requires conservation and management. *UCIDA I*, at 1065. Because NMFS agreed that the Cook Inlet EEZ salmon fishery needs conservation and management by some entity, the Ninth Circuit ruled that the Magnuson-Stevens Act requires that fishery be included in the Salmon FMP. 86 Fed. Reg. 60,568.

Upon publication of the final rule, UCIDA filed the instant lawsuit requesting the Court "declare that Amendment 14, its underlying implementing regulations, and NMFS's NEPA Finding of No Significant Impact ("FONSI") are arbitrary, capricious, and an abuse of discretion; not in accordance with law; and in excess of statutory jurisdiction, authority, or limitations." Complaint at 6-7.

### III. THE STATE OF ALASKA HAS A RIGHT TO INTERVENE UNDER RULE 24(a)

The State of Alaska has a right to intervene under Fed. R. Civ. Proc. 24(a) in order to defend the State's interests against the claims asserted by UCIDA. Rule 24(a)(2) provides that on timely motion, the court must permit intervention by anyone who:

> "[C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

*UCIDA, et al., v. NMFS, et al.,*  Case No.: 3:21-cv-00255-JMK
Motion to Intervene  Page 3 of 13
Case 3:21-cv-00255-JMK   Document 13   Filed 12/16/21   Page 3 of 13

protect its interest, unless existing parties adequately represent that interest."

When analyzing a motion to intervene as a matter of right under FRCP 24(a)(2), the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); (*citing Sierra Club v. US EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)). Rule 24(a) is construed broadly, in favor of the applicants for intervention. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018); (*citing Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)). Practical and equitable considerations guide courts in determining whether intervention is appropriate. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to courts.").

A.    **Alaska's Motion is Timely**

The test by which courts determine timeliness for intervention requires the consideration of three factors: (1) the stage of the proceedings at which intervention is sought; (2) the prejudice that would be suffered by other parties if intervention were

granted; and (3) the reason for and length of the delay in seeking intervention. *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319–20 (9th Cir. 1997). The State of Alaska's proposed intervention satisfies these timeliness requirements.

As to the first factor, this motion is being filed at the beginning of these proceedings. While the complaint was recently filed in November of 2021. As of the date of this pleading no substantive motions have been filed. UCIDA has filed a Motion to Expedite, and Alaska intends to fully comply with all schedules and deadlines established by this Court. As such, this factor weighs in favor of finding that Alaska's Motion to Intervene is timely.

Second, Alaska's participation will not prejudice the other parties. Alaska will endeavor to avoid duplication of issues with other parties. And given that this litigation is in its early stages, Alaska's intervention will not cause undue delay or adversely impact any parties' rights in this action. This factor also weighs in favor of finding that Alaska's Motion to Intervene is timely.

The third factor also weighs in Alaska's favor, as granting the Motion to Intervene at this stage will not cause any delays. No substantive actions have taken place between the original filing of the Complaint and Alaska's instant Motion to Intervene. Thus, Alaska's Motion to Intervene is timely.

**B.    Alaska Has a Significantly Protectable Interest in this Case**

The second element for intervention as a matter of right requires that the proposed intervenor demonstrates a "significantly protectable interest" by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects

upon [its] legally protectable interest." *Sw. Ctr. for Biological* Diversity, 268 F.3d at 818. The Ninth Circuit applies this broad interest criterion to involve "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. It is generally sufficient that the interest asserted is protectable under some law, and that there is a relationship between the protected interest and the claims at issue. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818.

Here, Alaska has several specific and significantly protectable interests in the subject matter of the instant dispute. As detailed below, these interests, whether viewed individually or collectively, satisfy the second element of the intervention analysis.

Alaska has a critical interest in the management and regulation of fish and wildlife within its borders. The desire for self-management of natural resources, and particularly for management of Alaska's fishery resources and salmon fisheries, were driving forces behind Alaska statehood. *See, e.g., Pullen v. Ulmer*, 923 P.2d 54, 57 n.5 (Alaska 1996); *Metlakatla Indian Community v. Egan*, 369 U.S. 45, 47, 82 S.Ct. 552, 555 (1962). General management authority over fish and wildlife within Alaska passed from the federal government to Alaska shortly after Alaska's adoption of a comprehensive fish and game code.[1]

---

[1] See Executive Order No. 10857, 25 Fed. Reg. 33 (Dec 29, 1959) (transferring management of fish and wildlife resources to the State of Alaska effective January 1, 1960); *see also Metlakatla Indian Community,* 369 U.S. at 47 n.2. State management is preempted only where clearly provided by statute or treaty, *e.g.* the

Under Alaska law, responsibility for fisheries management in Alaska is constitutionally vested in the Alaska legislature under Alaska Const. Art. VIII, § 2, but regulatory authority has been statutorily delegated to the Alaska Board of Fisheries and administrative authority to the Commissioner of the Alaska Department of Fish and Game. *See, e.g.,* AS 16.05.010; AS 16.05.020; AS 16.05.050; AS 16.05.060; AS 16.05.221; AS 16.05.241; AS 16.05.251. Subject to a subsistence priority, the Alaska Board of Fisheries is authorized under state law to allocate fishery resources among various user groups including commercial, sport, guided sport, subsistence, and personal use fisheries. AS 16.05.258; AS 16.05.251(e). Under this authority, the Alaska Board of Fisheries has adopted comprehensive fishery regulations for the Cook Inlet salmon fisheries. *See e.g.* 5 AAC 21.001 et seq.

Whether the party moving to intervene demonstrates sufficient interest to intervene is a "practical, threshold inquiry" for which "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993); aff'd *Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995). The moving party must demonstrate a "significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971), cited in *Southern Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984).

---

Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq.; the North Pacific Halibut Act, 16 U.S.C. 773; the Marine Mammal Protection Act, 16 U.S.C. 1361 et seq.; the Endangered Species Act, 16 U.S.C. § 1531 et seq.
*UCIDA, et al., v. NMFS, et al.,*  Case No.: 3:21-cv-00255-JMK
Motion to Intervene Page 7 of 13

_
...

*UCIDA, et al., v. NMFS, et al.,*   Case No.: 3:21-cv-00255-JMK
Motion to Intervene   Page 7 of 13
Case 3:21-cv-00255-JMK   Document 13   Filed 12/16/21   Page 7 of 13

*UCIDA, et al., v. NMFS, et al.,*   Case No.: 3:21-cv-00255-JMK
Motion to Intervene   Page 7 of 13
Case 3:21-cv-00255-JMK   Document 13   Filed 12/16/21   Page 7 of 13

This standard clearly is met here. The State of Alaska has vital interests in the Cook Inlet EEZ. In its request for relief UCIDA requests the Court "[v]acate Amendment 14 and its implementing regulations, and remand with an order instructing the Defendants to develop an FMP for the ***entire*** Cook Inlet salmon fishery that complies with the requirements of the MSA, APA, and NEPA and the Ninth Circuit's holding;" Complaint at 51 (emphasis in original). UCIDA appears to be requesting the Court order NMFS to manage salmon in Alaska's sovereign waters.[2] This request alone is clearly sufficient to warrant Alaska's intervention in the matter. The relief requested would functionally usurp Alaska's exercise of its sovereign jurisdiction over its fish, waters, and lands.

Courts have consistently held that interests much less significant than those asserted by Alaska in this matter are sufficient to meet the standards required to intervene as a matter of right. *See, e.g., Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir.1990) (finding that a City's interests in taxing and regulating contested lands were significantly protectable interests warranting intervention as of right); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d

---

[2] UCIDA has previously sought this relief from the District Court. *See United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs.*, No. 3:13-CV-00104-TMB, 2020 WL 1061794, at *1-2 (D. Alaska Jan. 6, 2020), aff'd sub nom. *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 807 F. App'x 690 (9th Cir. 2020) ("Plaintiffs request three forms of relief from this Court, as follows: 1. An order declaring that NMFS and the Council 'may not create an FMP that is subservient to or defers to state management goals' but rather the FMP must 'provide management goals, objectives, and measures throughout the entire range of the Cook Inlet salmon stocks, **including state waters**, as required by the Magnuson Act.'") (emphasis added)

*UCIDA, et al., v. NMFS, et al.,* Case No.: 3:21-cv-00255-JMK
Motion to Intervene Page 8 of 13
Case 3:21-cv-00255-JMK   Document 13   Filed 12/16/21   Page 8 of 13

994, 997-98 (8th Cir.1993) (finding that county's and landowners' property values that could be affected by the outcome of the litigation were protectable interests warranting intervention); *Douglas County v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir.1995) (holding that a county asserting proprietary environmental interests in lands adjacent to federal land had standing to challenge the Secretary of the Interior's failure to comply with NEPA); *Sierra Club v. Robertson*, 960 F.2d 83-84 (8th Cir.1992) (finding that a State's asserted interests in fish and wildlife, recreational opportunities, and water quality were sufficient to proceed as plaintiff-intervenor challenging the Forest Service's forest management plan). For the aforementioned reasons, Alaska has several significantly protectable interests in this dispute and must be able to fully and meaningfully participate in the litigation.

    **C.    Disposition of the Action May Impair or Impede the State's Ability to Protect its Interest**

A third criterion for intervention as of right is that "the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d at 1177. And in *Sierra Club v. United States,* 995 F.2d 1478 (9th Cir. 1993), the Ninth Circuit rejected the Sierra Club's assertion that the City of Phoenix could protect its interests in subsequent administrative proceedings. The court noted "the relief sought by the Sierra Club would constrain the EPA, which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings." *Id.* at 1486. The Court also observed the City of Phoenix had no avenue to administratively appeal

the constraints that might be placed on EPA's regulatory duties by virtue of an injunction.

Disposition of this action in Plaintiffs' favor could result in vacatur of Amendment 14 and federal management of salmon in Alaska's sovereign waters. In addition to the direct impacts such a result would have on Alaska's management of fisheries, its natural resources and its economy, disposition of this lawsuit may have far-reaching future consequences to the State.

If UCIDA's claims were to be successful, Alaska would face the prospect of NMFS being forced by judicial order to manage fisheries in Alaska's sovereign waters, and without the preemption procedure required by the MSA. Alaska's ability to seek redress of such an order would be limited if intervention at this stage is denied. For these reasons, Alaska satisfies the impairment requirement.

### D. The Federal Defendants May Not Adequately Represent Alaska's Interests

If an applicant meets the conditions of timeliness and impairment of interest, intervention shall be permitted "unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). According to the United States Supreme Court, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, (1972) (citation omitted). In assessing representation, courts consider (1) whether the present parties' interests are such that they will undoubtedly

make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.

In this case, the State's interest and the federal defendants' interests and legal positions may be different. Because the federal defendants do not share the same sovereignty concerns as the State, they cannot be counted upon to adequately represent the State's interests. Federal defendants surely have an interest in all EEZ waters, but they do not have the same interests in preserving state management in Alaska's sovereign waters or in the independent management interests. Also, the federal defendants' concerns about fishery issues in other parts of the nation could possibly motivate federal interpretations and legal positions that are detrimental to the State's interests. Upon intervention, the State's representation will focus on the State's significant interests at issue.

IV.   **CONCLUSION**

For the reasons stated above, the State of Alaska respectfully requests that the court grant this Motion to Intervene as of right under Rule 24(a).

*UCIDA, et al., v. NMFS, et al.,* Case No.: 3:21-cv-00255-JMK
Motion to Intervene Page 11 of 13
Case 3:21-cv-00255-JMK   Document 13   Filed 12/16/21   Page 11 of 13

Respectfully submitted this 16th day of December, 2021.

                TREG R. TAYLOR
                ATTORNEY GENERAL

By:   /s/Aaron C. Peterson
       Aaron C. Peterson
       Senior Assistant Attorney General
       Alaska Bar No. 1011087
       Department of Law
       1031 West Fourth Avenue, Ste. 200
       Anchorage, AK 99501
       Phone: (907) 269-5232
       Facsimile: (907) 276-3697
       Email: aaron.peterson@alaska.gov

*Attorney for the State of Alaska*

# CERTIFICATE OF SERVICE

I certify that on **December 16, 2021**, I filed a true and correct copy of the foregoing document was served electronically on all parties listed with the CM/ECF system. Copies of the foregoing were conventionally served on the following via USPS First Class mail at the addresses below:

James Balsiger, NMFS Alaska Region Administrator
P.O. Box 21668
Juneau, AK 99802-1668

Janet Coit, Assistant Administrator for Fisheries
1315 East-West Highway
Silver Spring, MD 20910

National Marine Fisheries Services
1315 East-West Highway
Silver Spring, MD 20910

National Oceanic and Atmospheric Association
1401 Constitution Avenue NW, Room 5128
Washington, DC 20230

Merrick B. Garland, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Bryan Wilson, Acting U.S. Attorney for the District of Alaska
222 West 7th Avenue, Room 253, #9
Anchorage, AK 99513

/s/Leilani J. Tufaga
Leilani J. Tufaga
Law Office Assistant II