Ryan P. Steen, AK Bar No. 0912084
Beth S. Ginsberg, Admitted *Pro Hac Vice*
Jason T. Morgan, AK Bar No. 1602010
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900 (phone)
(206) 386-7500 (facsimile)

Connor R. Smith, AK Bar No. 1905046
Stoel Rives LLP
510 L Street, Suite 500
Anchorage, AK 99501
(907) 277-1900 (phone)
(907) 277-1920 (facsimile)
connor.smith@stoel.com

*Attorneys for United Cook Inlet Drift Association and
Cook Inlet Fishermen's Fund*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED COOK INLET DRIFT ASSOCIATION and COOK INLET FISHERMEN'S FUND, | Civil Action No.: 3:21-cv-00255-JMK |
| Plaintiffs, | |
| v. | **PLAINTIFFS UNITED COOK INLET DRIFT ASSOCIATION AND COOK INLET FISHERMEN'S FUND'S MOTION TO ENFORCE** |
| NATIONAL MARINE FISHERIES SERVICE, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 2

III.    LEGAL STANDARD .............................................................................. 5

IV.     ARGUMENT .......................................................................................... 7

        A.      Amendment 16's OY defers entirely to the state in violation of the

                Court's SMJ Order and in violation of the law. ............................. 7

        B.      NMFS again shirks its duty by disregarding the statutory definition

                of "fishery." ................................................................................ 11

                1.      The FMP, OY, and MSY all must cover the "fishery." .................. 11

                2.      Amendment 16 contorts the definition of fishery to

                        unlawfully allow continued state control over the fishery. ............. 13

        C.      Relief requested. .......................................................................... 18

V.      CONCLUSION ..................................................................................... 19

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

i

# INDEX OF EXHIBITS

Amendment 16 – Final Rule (Apr. 30, 2024)…………………………………....Exhibit 1

Final EIS and RIR for Amendment 16 (Feb. 2024)………………………………Exhibit 2

Amendment 16 – Proposed Rule (Oct. 19, 2023)………………………………...Exhibit 3

Proposed Amendment 16 text……………………………………………………Exhibit 4

2024 Proposed Salmon Safe – Cook Inlet EEZ Area (Mar. 2024)……………....Exhibit 5

2024 Upper Cook Inlet Sockeye Salmon Forecast………………………………Exhibit 6

Proposed 2024 Harvest Specifications for Salmon………………………………Exhibit 7

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

# I. INTRODUCTION

On December 20, 2023, the Court held a status conference. *See* Dkt. 119. Plaintiffs United Cook Inlet Drift Association and Cook Inlet Fishermen's Fund (collectively "UCIDA") alerted the Court to its concern that this case was heading for a trainwreck in May 2024. *See* Dkt. 121-1 at 2. That trainwreck is here.

NMFS issued regulations implementing Amendment 16 to the Salmon FMP on April 30, 2024. Unfortunately, Amendment 16 did not cure many of the defects of its predecessor, Amendment 14. Instead, NMFS continues to try and preserve, adopt, and defer to state management objectives for the Cook Inlet salmon fishery. The result is worse than the status quo. State management objectives, policies, and decisions are still driving the management framework, but UCIDA members now must (in the next few weeks) secure new federal permits and install expensive and unnecessary monitoring equipment in order to even have the very limited opportunity to fish in federal waters.

The Court, however, is not powerless to prevent this endless cycle. The Court's Remedy Order requires NMFS to "issue regulations implementing a new FMP amendment that is consistent with the Court's Summary Judgment Order [("SMJ Order")] and the previous orders in this litigation, and complies with the Magnuson-Stevens Act [("MSA")], the APA, and all other applicable laws by no later than May 1, 2024." Dkt. 103 at 10. NMFS met the deadline, but not the substance. Amendment 16 does not comply with the Court's SMJ Order, the previous orders in this litigation, or the MSA. UCIDA requests that

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

1

the Court enforce its Remedy Order, vacate Amendment 16, and require NMFS to produce a compliant FMP amendment.

## II.    BACKGROUND

The Court's SMJ Order contains a detailed history of this litigation, *see* Dkt. 67 at 3–13, and UCIDA does not repeat it here other than to provide context to understand NMFS's current decision.

### *Amendment 12*

On December 21, 2012, NMFS approved Amendment 12 to the Salmon FMP. *See* Dkt. 67 at 8. Amendment 12 removed Cook Inlet from the Salmon FMP in order to defer management to the State of Alaska. *See id*. In 2016, after four years of litigation, the Ninth Circuit concluded that NMFS had "shirk[ed]" its statutory duty to provide an "FMP for each fishery within its jurisdiction requiring conservation and management." *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055, 1063 (9th Cir. 2016) (*UCIDA I*). The court explained, "[t]he Act makes plain that federal fisheries are to be governed by federal rules in the national interest, not managed by a state based on parochial concerns." *Id*. The court *rejected* arguments that the MSA "does not expressly require an FMP to cover an entire fishery" because "the statute requires an FMP for a fishery, a defined term. *See* 16 U.S.C. § 1802(13)." *Id*. at 1064. The case was remanded to NMFS to fix this problem.

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

2

*Amendment 14*

On November 3, 2021, NMFS approved Amendment 14 to the Salmon FMP. With Amendment 14, NMFS tried to defer to the State of Alaska in a different way—by closing all fishing in federal waters. Amendment 14 determined that "'[t]he Cook Inlet salmon fishery includes the stocks of salmon harvested by *all* sectors within State and federal waters of Cook Inlet,'" Dkt. 67 at 20 (quoting record), and that Optimum Yield ("OY") "for the Cook Inlet salmon fishery is set to 'the level of catch from all salmon fisheries occurring within Cook Inlet (State and Federal water catch) . . . .'" *Id*. at 23 (quoting record). In other words, OY is whatever the state has allowed under state management. But the Court explained that this was another unlawful deferral as it made "federal management standards in form rather than substance," violating the instructions in *UCIDA I. See id*. at 22–23.

The Court also explained that OY based on state harvest levels violated National Standard 1—the obligation to set the "optimum yield from each fishery" and to do so on "'the basis of maximum sustainable yield ["MSY"] from the fishery.'" *Id*. at 26–27 (quoting 16 U.S.C. § 1802(33)). As the Court explained, "[b]ootstrapping statutorily required management measures, such as MSY and OY, to the actual number of fish caught in the Cook Inlet, as determined by the State of Alaska, summarily casts the decision of what constitutes 'the amount of fish which . . . will provide the greatest overall benefit to the Nation' to the Alaska Department of Fish and Game.'" Dkt. 67 at 29 (quoting 16 U.S.C. § 1851(a)(1)).

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

123157449.7 0014655-00002

As a result of these (and many other) violations, the Court ordered that NMFS "shall issue regulations implementing a new FMP amendment that is consistent with the Court's [SMJ] Order and the previous orders in this litigation and complies with the [MSA], the APA, and all other applicable laws by no later than May 1, 2024." Dkt. 103 at 10.

*Amendment 16*

NMFS violated the substantive requirements of the Court's order when it published final regulations implementing Amendment 16. Dkt. 132 at 1. As the Court is aware, the North Pacific Fishery Management Council ("Council") refused to develop an amendment, so NMFS had to do it alone. Dkt. 98-1 at 2. Unfortunately, Amendment 16 finds yet another way to defer to the State of Alaska.

In Amendment 16, NMFS concludes that the MSY is either (a) the number of surplus fish over the state's escapement goals or (b) the historical harvest that has been allowed by the state. Ex. 1 at 2. NMFS determined that MSY applies to *all* fishing for stocks in state and federal waters. Ex. 1 at 2 ("MSY is specified for salmon stocks and stock complexes in Cook Inlet"). NMFS then determined that OY would be a range that includes all historical catches that the State of Alaska has allowed *in federal waters only,* between 1991 and 2021, and that all other surplus fish are allocated to the state to manage as it pleases. Ex. 1 at 2. And although in Amendment 14 NMFS claimed that "the OY for the Cook Inlet salmon fishery is set to 'the level of catch from all salmon fisheries occurring within Cook Inlet (State and Federal water catch) . . .'" (Dkt. 67 at 23), NMFS now claims that OY is only for federal waters. Ex. 1 at 2.

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

4

The salmon season is set to begin in the middle of June. The total surplus of sockeye salmon alone (above escapement goals) in Cook Inlet is expected to be more than 3.72 million fish. Ex. 6 at 1. NMFS's proposed harvest limits this summer will allow harvest of only (at most) 492,100 sockeye, not to mention the unknown significant surpluses of other salmon species in Cook Inlet that will go unharvested. Ex. 7 at 3; *see also* Ex. 6 at 7.

## III. LEGAL STANDARD

The Court retained jurisdiction during remand "to ensure full and timely compliance with all aspects of the remedy" detailed in its Remedy Order. Dkt. 103 at 11. The applicable legal benchmarks—the MSA and other applicable law—are described in the Court's SMJ Order. *See* Dkt. 67 at 13–15. Amendment 16 must comply with these laws and with "the Court's [SMJ] Order and the previous orders in this litigation." Dkt. 103 at 10.

A federal court has authority to manage its proceedings, vindicate its authority, and effectuate its decrees. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). A motion to enforce a court's previous judgment may be granted if the moving party demonstrates that its opponent has not complied with the terms of the judgment. *State of California v. U.S. Dep't of Lab.*, 155 F. Supp. 3d 1089, 1096 (E.D. Cal. 2016). The exercise of this authority is "particularly appropriate" when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency. *See Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984).

"The Court should grant a motion to enforce if a 'prevailing plaintiff demonstrates

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

5

that a defendant has not complied with a judgment against it.'" *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (citation omitted). "In determining whether an agency has complied with the terms of a remedial order on remand, the Court is guided not only by the text of that order but also by its relevant opinions." *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (citing *City of Cleveland, Ohio v. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1997)). Conversely, if a plaintiff "has received all relief required by that prior judgment, the motion to enforce is denied." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (citation omitted).

On a motion to enforce, a court is permitted to grant relief necessary to ensure compliance with the court's prior orders and the law. *See Armstrong v. Newsom*, No. 94-CV-02307 CW, 2024 WL 1221955, at *20 (N.D. Cal. Mar. 20, 2024) (granting motion to enforce when defendants failed to comply with the court's order and the Americans with Disabilities Act). When defendants persist in non-compliance, multiple motions and orders to enforce may be necessary. *See id.* at *3, *20 (describing two prior motions to enforce that were granted and ruling that a third enforcement order was necessary). When additional remedial measures are necessary to bring defendants into compliance with the court's order and the law, these additional measures—if intended and tailored for this purpose—may be awarded. *See id.* at *18. A court's enforcement jurisdiction is grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union*, 733 F.2d at 922.

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

123157449.7 0014655-00002

## IV.    ARGUMENT

UCIDA's members have run out of time. If administrative law really permits a perpetual cycle of litigation with repeated violations by the government that are never corrected—as NMFS has suggested—then UCIDA's members will lose (despite winning on the merits) because they cannot outlast the government. This Court ordered NMFS to prepare a lawful FMP amendment that complied with the Court's Orders. Amendment 16 is neither lawful nor compliant, and this motion focuses on two foundational reasons why it is not. They go to the very heart of Amendment 16 and form the bedrock that the amendment's infrastructure is built on. Like a house of cards, when these foundational errors are corrected, the remainder of Amendment 16 falls. UCIDA respectfully requests that this Court immediately vacate Amendment 16 for failure to comply with the Court's Remedy Order and order the parties to mediation to develop interim measures for the period until a lawful and compliant FMP is developed.

### A.    Amendment 16's OY defers entirely to the state in violation of the Court's SMJ Order and in violation of the law.

The MSA requires that "[a]ny [FMP] which is prepared by any Council, or by the Secretary, with respect to any fishery, shall . . . assess and specify the present and probable future condition of, and the maximum sustainable yield and ***optimum yield from, the fishery***, and include a summary of the information utilized in making such specification." 16 U.S.C. § 1853(a)(3) (emphasis added). The MSA provides further that:

> The term "optimum," with respect to the yield from a fishery, means the amount of fish which—(A) will provide the greatest overall benefit to the

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

7

Nation, particularly with respect to food production and recreational opportunities, and taking into account the protection of marine ecosystems; (B) is prescribed on the basis of the maximum sustainable yield from the fishery, as reduced by any relevant social, economic, or ecological factor; and (C) in the case of an overfished fishery, provides for rebuilding to a level consistent with producing the maximum sustainable yield in such fishery.

16 U.S.C. § 1802(33). The MSA also provides that an FMP's "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1). NMFS acknowledges these statutory provisions. *See, e.g.*, Ex. 4 at 38.

In Amendment 16, NMFS explains that "the OY range for the Cook Inlet EEZ salmon fishery is specified as the range between the average of the three lowest years of total estimated EEZ salmon harvest and the three highest years of total estimated EEZ salmon harvest from 1999 to 2021." Ex. 4 at 49. This definition of OY violates the Court's Orders and the MSA for multiple reasons.

First, NMFS has chosen a measure of OY that ensures full-scale deferral to the State of Alaska. The Court explained that under state management, "the commercial harvest of salmon from the Cook Inlet has decreased significantly over the past two decades." Dkt. 67 at 7. Yet, inexplicably, NMFS relies entirely on performance *from the past two decades of unlawful management* to define the level of yield that is optimum in the Cook Inlet EEZ. *See* Ex. 2 at 128–29. Because NMFS's OY range includes the average of the three lowest years and the average of the three highest years of total estimated EEZ salmon harvest from 1999 to 2021, *see* Ex. 2 at 128–29, NMFS has set an OY range that accounts for nearly

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

8

*every possible harvest scenario that has occurred in the last two decades under state management*. This is deferral.

In Amendment 14, NMFS closed the Cook Inlet EEZ so that the state could exclusively manage the Cook Inlet salmon fishery by permitting commercial fishing only in state waters. Ex. 2 at 5. NMFS was told it cannot just close the EEZ so, with Amendment 16, it did the next closest thing. It created a "Cook Inlet EEZ salmon fishery" that is designed, quite intentionally, to maintain the status quo—i.e., facilitating state management. In the final rule, NMFS itself explains that "[b]ecause EEZ fishing opportunity is expected to be similar to the status quo under this action, salmon harvests in the Cook Inlet EEZ Area and other areas of Cook Inlet are expected to remain at or near existing levels." Ex. 1 at 30. NMFS states that "[i]n the near-term, this action is not expected to result in the harvesting of significantly more or less salmon in the Cook Inlet EEZ." *Id.*; *id.* at 34 ("This action is expected to maintain Cook Inlet EEZ salmon harvests at or near existing levels.").

But the Court explained in its SMJ Order:

> "[F]ederal fisheries are to be governed by *federal rules* in the *national interest*." Bootstrapping statutorily required management measures, such as MSY and OY, to the actual number of fish caught in the Cook Inlet, as determined by the State of Alaska, summarily casts the decision of what constitutes "the amount of fish which . . . will provide the greatest overall benefit to the Nation" to Alaska's Department of Fish and Game. . . .
>
> . . . . The plan for continuous federal management cannot consist of the agency abandoning its responsibilities in favor of deferral to the State. This approach would open the door for state management that is inconsistent with, and free from, oversight by the federal agencies ultimately tasked with

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

9

conservation and management of the fishery. . . .

The administrative record is replete with justifications from NMFS for why the State of Alaska should continue to manage salmon stocks in the Cook Inlet EEZ, but fails to wed State management of the Cook Inlet salmon with proper standards for determining the OY of that fishery.

Dkt. 67 at 29–31 (emphasis in original). This is déjà vu all over again. The only substantive difference between Amendment 14 and Amendment 16 for OY purposes is that a portion of the fishing under the state's management goals will take place in the EEZ. NMFS has "[b]ootstrapp[ed] statutorily required management measures, [i.e.,] OY, to the actual number of fish caught in the Cook Inlet, as determined by the State of Alaska." *Id*. at 29. This directly violates the Court's SMJ Order.

Second, NMFS's measure of OY violates National Standard 1. It's been said that "if you aim at nothing, you will hit it every time." This is precisely what NMFS has done by setting OY "as the range between the average of the three lowest years of total estimated EEZ salmon harvest and the three highest years of total estimated EEZ salmon harvest from 1999 to 2021." Ex. 4 at 49. National Standard 1 requires the FMP amendment to include "[c]onservation and management measures [to] prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1). But NMFS's OY is set to achieve the status quo—deferral to the state—not the optimum yield from the Cook Inlet salmon fishery as the MSA directs. This Court already held that OY based on state harvest levels violates National Standard 1. *See* Dkt. 67 at 26–27.

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

10

Third, NMFS's measure of OY is not based on MSY, as required. The MSA provides that OY must be prescribed "on the basis of the maximum sustainable yield from the fishery." 16 U.S.C. § 1802(33). In Amendment 16, "MSY is specified for salmon stocks and stock complexes in Cook Inlet," but for OY, NMFS has arbitrarily cut these salmon stocks and stock complexes up based on a jurisdictional boundary. *See infra* Section IV.B. Further, OY is based on a range of catch under state management, not on MSY. This too is deferral and a violation of the MSA.

Fourth, the FMP must set and specify the OY from the "fishery," a defined term. 16 U.S.C. § 1853(a)(3). The FMP only sets OY for NMFS's artificially defined "Cook Inlet EEZ salmon fishery." Ex. 4 at 49; *see also* Ex. 1 at 11; Ex. 2 at 128–29. As explained below, NMFS has improperly defined the "fishery" for purposes of the scope of its FMP amendment, which is another reason Amendment 16 is unlawful. *See infra* Section IV.B.

Because NMFS has chosen to include an OY measure that is entirely deferential to the State of Alaska, Amendment 16 violates the Court's Orders, which do not permit deferral to the state.

**B.      NMFS again shirks its duty by disregarding the statutory definition of "fishery."**

**1.      The FMP, OY, and MSY all must cover the "fishery."**

The MSA requires NMFS to prepare an FMP "for each *fishery* under its authority that requires conservation and management." 16 U.S.C. § 1852(h)(1) (emphasis added). Each FMP must achieve "the optimum yield from each *fishery*." *Id*. § 1851(a)(1) (emphasis

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

11

added). Optimum yield must be prescribed "on the basis of the maximum sustained yield from the *fishery* . . . ." *Id.* § 1801(33) (emphasis added).

"Fishery" is "a defined term." *UCIDA I*, 837 F.3d at 1064. It means: "(A) one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics; and (B) any fishing for such stocks." 16 U.S.C. § 1802(13). "Fishing" is defined broadly to include all catching and harvesting of fish. *See* 16 U.S.C. § 1802(16). In addition, a "stock of fish" means "a species, subspecies, geographical grouping, or other category of fish capable of management as a unit." 16 U.S.C. § 1802(42).

There is some discretion built into subsection (A) of the MSA's definition of a "fishery." For example, a "fishery" can be one stock of fish or more than one stock if the stocks can be combined as a unit for purposes of conservation and management. *See* 16 U.S.C. § 1802(13)(A). The stock or stocks of fish that make up a fishery are to be identified based on "geographical, scientific, technical, recreational, and economic characteristics." *See* 16 U.S.C. § 1802(13). But subsection (B) of the definition of a "fishery" does not contain any discretion. Once the stock or stocks of fish at issue have been defined based

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

12

on the listed characteristics, subsection (B) requires that a "fishery" includes "any fishing for such stocks."[1] 16 U.S.C. § 1802(13)(B).[2]

Simply put, the definition of "fishery" dictates the scope of the FMP that NMFS is required to prepare. It dictates the scope of both OY and MSY. A fishery includes "any fishing for such stocks" without distinction for whether such fishing is occurring in waters under NMFS's authority or in waters under state authority.

### 2. Amendment 16 contorts the definition of fishery to unlawfully allow continued state control over the fishery.

This Court already admonished NMFS that "[d]efinitional semantics cannot substitute for actual management . . . ." SMJ Order at 25. NMFS did not get the message.

With Amendment 16, NMFS agrees that MSY must be set for the "fishery," which includes all fishing for salmon stocks in Cook Inlet, both in state and federal waters. Ex. 1 at 2. NMFS explains the MSA requires that "[b]ecause MSY must be defined in terms of stocks or stock complexes, this definition of MSY does not subdivide between State and EEZ waters in Cook Inlet." Ex. 1 at 11. This is logical and required by the statute. The

---

[1] The MSA does not say "any [federal] fishing for such stocks."

[2] This definition of "fishery" makes sense in the historical context of the MSA. Prior to the MSA, "the United States asserted authority only over waters up to twelve nautical miles from the coastline, and *there was substantial concern that foreign fishers were depleting American fisheries*." *UCIDA I*, 837 F.3d at 1058 (emphasis added). In response, the MSA "extended federal jurisdiction to 200 miles from the coastline and regulated foreign fishing in that area." *Id.* (citations omitted). The MSA also included a requirement that the scope of an FMP include "any fishing" taking place in the "fishery," in what was likely a response to concerns about fishing outside of the EEZ harming American fisheries and national interests.

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

MSA *requires* every FMP to "assess and specify ... the maximum sustainable yield and optimum yield from [] the fishery," 16 U.S.C. § 1853(a)(3) (Required Provision 3), and as explained above, "fishery" is defined in terms of stocks of fish and *any* fishing on those stocks, 16 U.S.C. § 1853(13).

But NMFS's next step is inexplicable. NMFS concludes that for OY, the word "fishery" means something different. For OY, NMFS says "the fishery is properly defined as all harvest of co-occurring salmon stocks in the Cook Inlet EEZ." Ex. 1 at 11. This is definitional semantics run amuck. When Congress instructed that every FMP must "assess and specify ... the maximum sustainable yield and optimum yield from [] the fishery," assuredly it did not mean "the fishery" was a different thing for "maximum sustainable yield and optimum yield." 16 U.S.C. § 1853(a)(3). Indeed, Congress left no room for such semantics when it defined the term fishery to mean a "stock of fish" and "*any* fishing for such stocks." 16 U.S.C. § 1802(13) (emphasis added). This defined term means the same thing regardless of whether it applies to the scope of the FMP (for "each fishery"), the obligation to set OY (for "each fishery"), or the statutory definition of OY (as the "yield from a fishery" established on the basis of "maximum sustained yield from the fishery"). 16 U.S.C. § 1852(h)(1), § 1853(a)(3), § 1802(33). In each case, "fishery" is the same "defined term." *UCIDA I*, 837 F.3d at 1064.

Equally problematic, this is just deferral all over again. NMFS is required to "assess and specify" the OY for the fishery, which ensures the "yield from a fishery" that will "provide the greatest overall benefit to the Nation." 16 U.S.C. § 1853(a)(3), § 1802(33).

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

14

NMFS did not do that here. Instead, it described OY for part of the fishery, leaving OY for the entire fishery to the discretion of the State of Alaska. NMFS thus, again, improperly elevates state parochial interests over the federal interests, and the MSA's standards. *UCIDA I*, 837 F.3d at 1063. By cabining OY to federal waters, NMFS ensures that it has no involvement in how the "fishery" as a whole—the stocks of fish and any fishing for those stocks—will be managed to meet the goals of the MSA.

NMFS tries to create jurisdictional roadblocks for itself by claiming the scope of the FMP must only cover the EEZ waters and that it has no authority to require the state to *comply* with OY within state waters. Ex. 1 at 9. But "fishery" is defined in terms of a "stock of fish" and "any fishing" on that stock, not on the basis of jurisdictional boundaries.[3] NMFS is statutorily required to prepare an FMP for the "fishery" and "*assess and specify … optimum yield from [] the fishery.*" 16 U.S.C. § 1852(h)(1), § 1853(a)(3). The fact that a stock passes through more than one jurisdiction may present logistical challenges in

---

[3] NMFS's jurisdictionally bound "fishery" completely leaves out the non-discretionary subsection (B) of the definition. As explained above, the term "fishery" for purposes of dictating the scope of an FMP is defined to include "any fishing on such stocks." 16 U.S.C. § 1802(13)(B). NMFS readily acknowledges that there are multiple fishing sectors that fish for the same stocks of fish that pass through the EEZ. *See* Ex. 1 at 9 ("NMFS will establish catch limits for the Cook Inlet EEZ that are based on achieving escapement goals as defined in the Federal stock assessment, while accounting for both State and Federal expected harvests"; "total harvest of Cook Inlet salmon stocks will continue to occur predominately within State waters"); *id.* at 9–10 ("NMFS must necessarily account for projected removals from State-managed fisheries in setting the harvest levels for the Cook Inlet EEZ Area."). The MSA requires that the scope of NMFS's FMP must include "any fishing on such stocks." There is no jurisdictional wiggle room in subsection (B) of the definition of "fishery."

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

15

achieving OY for the "fishery," but NMFS cannot shirk its statutory duty to "assess and specify" OY for the fishery just because Congress gave it a difficult task. Indeed, until NMFS prepares an FMP for the fishery and assesses and specifies OY for the fishery, there is no way to know whether the state can, or will, manage fishing in state waters in a manner consistent with OY.[4] Simply put, NMFS cannot shirk its statutory duty to assess and specify OY simply because OY (once specified) might be difficult to achieve in practice. As the Court explained, "'avoid[ing] the introduction of an additional management jurisdiction'" is an "insufficient justification[] for the abdication of federal management authority." Dkt. 67 at 29.

Indeed, NMFS's own regulations contemplate that an FMP should include conservation and management measures for state waters, even though it may not be able to enforce them. 50 C.F.R. § 600.320(d)(2) (FMP "should include conservation and management measures for that part of a management unit *within U.S. waters*,[5] although the Secretary can ordinarily implement them only within the EEZ." (emphasis added)). NMFS's regulations further explain that "[w]here state action is necessary to implement measures within state waters to achieve FMP objectives, the FMP should identify what

_____

[4] The State has publicly said that it "would not accept a delegation of management authority for the Cook Inlet EEZ salmon fishery under the conditions that would be necessary to comply with the MSA," i.e., that it will not manage fishing in state waters consistent with the MSA. Dkt. 98-1 at 2. The State's failure to manage in state waters to meet OY or MSY, or based on the best available science, has caused Plaintiff's members significant harm over the past two decades.

[5] The term "U.S. waters" includes state waters. 16 U.S.C. § 1802(45) ("The term 'United States' when used in a geographic context, means all the States thereof.").

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

16

state action is necessary, discuss the consequences of state inaction or contrary action, and make appropriate recommendations." *Id.*

NMFS did not do any of that here. By limiting the scope of its FMP and its measure of OY to federal waters, NMFS makes no assessment of what level of fishing on Cook Inlet stocks will provide the greatest benefit to the nation (the primary purpose of OY as a conservation and management measure under National Standard 1), makes no assessment of what state actions are necessary to achieve that (unidentified) level of optimal harvest, provides no discussion of the consequences of the state continuing the status quo, and provides no recommendations to the state on what it could do differently. Instead, NMFS continues to defer to the state, repeating the same problems from Amendments 12 and 14.

The artificially narrow scope of NMFS's FMP and NMFS's failure to assess, specify, or set measures to achieve OY for the fishery is a foundational, pervasive error, which leads to bizarre results throughout the FMP, including definitions of the stocks in the "fishery" that artificially cut the stocks up based on where they are harvested and that are inconsistent with NMFS's own harvest specifications.[6] NMFS states that these stocks will receive "tier assignments." Ex. 2 at 116. Tier 1 is assigned to "salmon stocks with escapement goals and stock-specific harvests." *Id.* But none of the stocks—as NMFS defined them to only include salmon harvested in the EEZ—can have escapement goals.

---

[6] *Compare* Ex. 2 at 116 (defining Kenai and Kasilof stocks as the Kenai and Kasilof "sockeye salmon harvested in the Cook Inlet EEZ Area") *with* Ex. 5 at 29, 34 (defining the Kenai and Kasilof stocks to include "harvest, spawning escapements, and associated spawning escapement goals corresponding with the SOA definition[s]").

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

123157449.7 0014655-00002

There cannot be an escapement goal for "Kenai Late Run sockeye salmon harvested in the Cook Inlet EEZ Area." *Id*. The stock is defined by Amendment 16 as fish that are "harvested," so by definition, any fish that "escape" harvest and spawn cannot be included in that stock. This is the absurd result of NMFS's "definitional semantics."

In short, NMFS has once again found a new and clever way to try and continue to defer to the state's historic management practices, even as commercial harvests continue to dwindle. NMFS's obligation is to prepare an FMP for the "fishery" and to ensure that the "fishery" is managed consistent with the MSA and its national standards. It has once again failed in that duty.

## C. Relief requested.

"At some point," a court "must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough." *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987). This is now the third time that NMFS has approved an FMP amendment that tries to defer its statutory duties to the State of Alaska in violation of the MSA. NMFS has repeated errors by failing to establish OY for the fishery based on federal, rather than state, interests, and by engaging in definitional semantics to evade clear statutory requirements. UCIDA respectfully requests that the Court vacate Amendment 16. As the Court explained in its SMJ Order, "'[t]he ordinary practice is to vacate unlawful agency action.'" Dkt. 67 at 53 (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)). As explained above, Amendment 16 is unlawful because it violates the MSA, other applicable law, and the Ninth Circuit's and this Court's

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

123157449.7 0014655-00002

Orders. Vacatur is particularly appropriate here given that the foundation of the FMP amendment is erroneous.

In the meantime, UCIDA's members need interim relief to achieve some semblance of MSA compliance until NMFS can produce a compliant FMP amendment. UCIDA respectfully requests that the Court order the parties to immediately engage in mediation regarding interim measures.

## V. CONCLUSION

For the foregoing reasons, Amendment 16, the associated final rule, and implementing regulations fail to comply with the Court's Orders and therefore should be vacated.

DATED this 24th day of May, 2024.

*/s/ Jason T. Morgan*
Jason T. Morgan, AK Bar No. 1602010
Ryan P. Steen, AK Bar No. 0912084
Beth S. Ginsberg, Admitted *Pro Hac Vice*
Connor R. Smith, AK Bar No. 1905046

Attorneys for United Cook Inlet Drift
Association and Cook Inlet Fishermen's Fund

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court, District of Alaska by using the CM/ECF system, which will send notice of such filing to counsel of record.

/s/ Jason T. Morgan
Jason T. Morgan, AK Bar No. 1602010
Ryan P. Steen, AK Bar No. 0912084
Beth S. Ginsberg, Admitted *Pro Hac Vice*
Connor R. Smith, AK Bar No. 1905046

*United Cook Inlet Drift Association v. NMFS*, 3:21-cv-00255-JMK

20